UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALLAN B. BEDELL,

    Plaintiff,

 v.              Case No. 03-C-1300

THE GUARDIAN LIFE INSURANCE
COMPANY,

    Defendant.

**DECISION AND ORDER**

  This breach-of-contract action is before the court on diversity jurisdiction. 28 U.S.C. § 1332. The parties have filed cross-motions for summary judgment.[1] For the following reasons, defendant's motion will be granted in part and denied in part, and plaintiff's motions will be denied.

**FACTS**

  This case concerns pension benefits due plaintiff from defendant. Plaintiff Allan B. BeDell was a full-time agent for Defendant The Guardian Life Insurance Company from 1978 until March 15, 2001. (Def.'s PFOF ¶ 7.) On that date (which was four days shy of plaintiff's sixty-fifth birthday), defendant terminated him. The stated reason for plaintiff's termination was that he had not met defendant's annual production requirement (APR) for three consecutive years (1998-2000).

---

[1] Defendant filed a motion for partial summary judgment on January 4, 2005. Plaintiff filed a motion for partial summary judgment on January 5, 2005. Plaintiff filed a motion for summary judgment on the remaining issues on March 28, 2005.

(Def.'s PFOF ¶¶ 24-25, 32.) Plaintiff claims that the real reason for his termination was defendant's desire to avoid vesting of his pension benefits. (Am. Compl. ¶¶ 13, 17.)

While employed by defendant, plaintiff participated in two non-ERISA-qualified pension plans offered by defendant. (Def.'s PFOF ¶¶ 8-9.) The Agent's Supplementary Retirement Plan (ASRP), which had both a 1970 version and a 1990 version, is a deferred compensation plan under which defendant made annual allotments of credits to plaintiff's account based on the commissions earned by plaintiff. (Def.'s PFOF ¶ 10.) Defendant allotted credits only for years in which plaintiff had met his APR. (Def.'s PFOF ¶ 16.) Plaintiff met his APR and received allotments of credits for 1979-1981, 1983, 1986-87, and 1992. (Def.'s PFOF ¶ 17.) As of March 31, 2001, the total value of those credits and the returns thereon was $108,950.38. (Def.'s PFOF ¶ 36.)

Plaintiff also participated in the Full-Time Agent's Retirement Plan (FTA Plan). Both plaintiff and defendant (on plaintiff's behalf) made contributions to this plan. Defendant's contributions did not vest and have been forfeited. (Def.'s PFOF ¶ 37.) The total value of plaintiff's contributions as of the date he was terminated was $24,086.53. (Pl.'s First PFOF ¶ 4.) Defendant tendered to plaintiff a check in that amount on May 1, 2001. (Am. Compl. ¶ 15.) Plaintiff refused to accept the check. (Pl.'s First PFOF ¶ 5.)

**ANALYSIS**

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Wantz v. Experian Information Sys.*, 386 F.3d 829, 832 (7th Cir. 2004); Fed. R. Civ. P. 56. In analyzing

whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment can be particularly appropriate in contract actions where the disposition of the case involves the interpretation of a contract. *Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770, 771-72 (7th Cir. 2000). Under Wisconsin law,[2] the construction of a contract is a question of law. *Elkhart Lake's Road Amer. v. Chicago Hist. Races*, 158 F.3d 970, 972 (7th Cir. 1998). Where the terms of a contract are clear and unambiguous, the court must interpret it according to its literal terms. *Gorton v. Hostak, Henzl & Bichler, S.C.*, 577 N.W.2d 617, 622-23 (Wis. 1998). But when

---

[2]While the contract does not contain a choice-of-law provision, the parties' briefs assume that Wisconsin law applies. The court will do so as well. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir.2002) (holding that absent discussion of choice-of-law issues, federal court sitting in diversity should apply law of forum state); *see also State Farm Mutual Auto. Ins. Co. v. Gillette*, 641 N.W.2d 662, 676 (Wis. 2002) (holding that Wisconsin courts should assume that Wisconsin law applies unless it is clear that non-forum contacts are more significant).

3

the terms of the contract are reasonably susceptible to more than one construction, the contract is ambiguous and the court attempts to ascertain the intent of the parties. *Id.* Yet, even when a term or provision is ambiguous, the issue presented is still one of law, unless the ambiguity must be resolved by considering facts that are extrinsic to the contract itself and the evidence relating to those facts is in dispute. *Walgreen Co. v. Sara Creek Property Co.*, 775 F. Supp. 1192, 1195 (E.D. Wis. 1991), *aff'd*, 966 F.2d 273 (7th Cir. 1992). When that is not the case, however, and when what actually occurred is not in dispute and the only question to be decided is what rights the contract affords the parties in light of those facts, there is no need for a trial. As one can surmise from the fact that both parties to the contract here have filed motions for summary judgment, this is such a case.

**I. The ASRP**

The parties dispute which of the two versions of the ASRP plaintiff was a participant in when he was terminated. Defendant argues that plaintiff was a participant in the 1970 version of the ASRP. Under the 1970 ASRP, a participant ordinarily needed to have received allotments of credits in at least ten years for any of those credits to vest. Defendant could cancel the credits of participants who received fewer than ten allotments.[3] (1970 ASRP (Lavey Aff., Ex. 102) § 2.03(a).) In arguing that his seven allotments of credits vested even if he was a participant in the 1970 ASRP, the plaintiff relies on the following language in the section of the 1970 ASRP that covers vesting:

> Notwithstanding the foregoing . . . if a general agent or full-time commission agent retires on or after his Normal Retirement Date, he shall be treated as if he had

---

[3]The parties dispute whether cancellation of credits occurred automatically after a participant went five years without receiving an allotment of credits, or whether defendant merely had the power to cancel credits after five such years. Because plaintiff is not entitled to benefits in either case, the court need not resolve the dispute.

4

>   received fifteen previous allotments of Company Credits for purposes of determining whether there should be any cancellation of his Accumulated Credits under this Section.

(1970 ASRP § 2.03(a).) The 1970 ASRP defines "Normal Retirement Date" to mean plaintiff's "65th birthday" (1970 ASRP § 1.10), which was March 19, 2001. Plaintiff's obvious problem is that he was terminated on March 15, 2001. Thus, he did not retire on or after his Normal Retirement Date.

In an effort to avoid this problem, plaintiff argues that his termination was a breach of defendant's duty of good faith and fair dealing. The duty of good faith and fair dealing serves "to give the parties what they would have stipulated for expressly if at the time of making the contract they had had complete knowledge of the future and the costs of negotiating and adding provisions to the contract had been zero." *Market Street Assocs. Ltd. Partnership v. Frey*, 941 F.2d 588, 596 (7th Cir. 1991) (applying Wisconsin law). Plaintiff does not specify under which contract between plaintiff and defendant the duty of good faith and fair dealing arose. The court cannot find that the parties would have stipulated to a provision in the 1970 ASRP that would have forbidden defendant to terminate plaintiff prior to his Normal Retirement Date if they had complete knowledge of the future. Rather, the 1970 ASRP clearly provides that the plaintiff had "no right to retain his contract of agency because of the allotment of . . . Credits and no provision or action by [defendant] under [the 1970 ASRP] shall impair or affect [defendant's] right of independent action in respect to that contract." (1970 ASRP § 2.02.)

Nor can the court find that the parties would have stipulated to a provision in plaintiff's contract of agency that would have forbidden defendant to terminate plaintiff prior to his Normal Retirement Date. "In general, at-will employees are terminable at will, for any reason, without

5

cause and with no judicial remedy." *Bammert v. Don's Super Valu, Inc.*, 646 N.W.2d 365, 368 (Wis. 2002). Wisconsin has specifically declined to impose an implied duty not to terminate employment contracts in bad faith. *Brockmeyer v. Dun & Bradstreet*, 335 N.W.2d 834, 838 (Wis.1983). Accordingly, the court will not do so here.

Plaintiff argues that he was a participant in the 1990 version of the ASRP rather than the 1970 version. Under the 1990 ASRP, some of plaintiff's credits would have vested prior to his termination. Plaintiff's contention that he was a participant in the 1990 ASRP stems from a memo sent by Robert Collins, defendant's Agency Vice President, to plaintiff and other full-time agents on January 22, 1990. The memo advises plaintiff that defendant introduced a new version of the ASRP on January 1, 1990. It states that plaintiff "will automatically be placed in the 1990 version for [his] allotments earned hereafter unless [he] should elect to continue earning future allotments under the 1970 version." (Praska 2/7/05 Aff. ¶ 2, Ex. A.) The memo states that plaintiff should fill out an attachment and return it prior to March 1, 1990, if he wishes to remain in the 1970 ASRP. It advises him not to execute the attachment if he wishes his future allotments to be credited to the 1990 ASRP, as this will automatically take place absent receipt of the executed attachment. (*Id.*) Plaintiff avers that he does not recall, and has no record of, notifying defendant that he wished to stay in the 1970 ASRP. (BeDell Aff. ¶ 20.) He further claims that it was his understanding from 1990 on that he was in the 1990 ASRP.[4] (BeDell Aff. ¶ 21.) Plaintiff also notes that no copy of his completed attachment was unearthed in discovery. (Pl.'s Resp. Br. at 3; Praska 2/7/05 Aff. ¶¶ 3-7.)

---

[4]Where an offeree is alleged to have indicated his acceptance by silence, evidence of his subjective intent is admissible to prove the existence of the contract. Restatement (Second) of Contracts § 69(1)(b) (1981).

6

A reasonable jury could conclude from this that plaintiff did not, in fact, return the attachment, and thus that he transferred to the 1990 ASRP.

Defendant submits two declarations with its reply brief to show that plaintiff was a participant in the 1970 ASRP rather than the 1990 ASRP. Timothy Lavey, who is an employee of defendant responsible for administering the ASRP, attests that in 1992, plaintiff received an allotment of credits that was calculated under the 1970 ASRP rather than under the 1990 ASRP. (Lavey Decl. ¶¶ 9-10.) Lael Summer, who was defendant's Manager of Agency Financial Services in the spring of 2001, avers that the person who held her position in 1990 made a practice of noting on file cards whether an agent had opted to remain in the 1970 ASRP. (Summer Decl. ¶ 4.) Summer attaches to her affidavit a copy of a file card, from which she claims to have determined that plaintiff opted to remain in the 1970 ASRP. (Summer Decl. ¶¶ 3, 5-6.) No explanation is given for this determination, and the court cannot, upon examination of the file card, discern the basis for it. More fundamentally, though, the problem with defendant's evidence is that it shows only that defendant believed plaintiff was in the 1970 ASRP. The question is whether plaintiff returned to defendant an attachment indicating that he wished to remain in the 1970 ASRP. If he did, he remained in that plan. If he did not, he transferred to the 1990 ASRP. Which plan defendant believed plaintiff was in is relevant only insofar as it is evidence of whether plaintiff returned the attachment. *See, e.g., Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.*, 567 N.W.2d 67, 75 (Wis. 1996) ("[M]utual assent is judged by an objective standard."). Defendant's evidence suffices to preclude summary judgment in plaintiff's favor, but it does not permit summary judgment in defendant's favor.

7

Defendant argues that even if plaintiff was in the 1990 ASRP, only the credits from his 1992 allotment vested. Plaintiff contends that all seven of his allotments vested under the 1990 ASRP.[5] The 1990 ASRP provides that participants will be fully vested after receiving five allotments. (1990 ASRP (Scott Suppl. Aff., Ex. 201) § 2.03(a).) Likewise, the Collins memo states that under the 1990 ASRP, "[v]esting in the event of termination prior to normal retirement, death or permanent disability" will be "100% . . . after five allotments." (Praska Aff. ¶ 2, Ex. A.) Plaintiff received six allotments prior to 1990 and a seventh allotment in 1992. The parties dispute whether the six pre-1990 allotments were considered for vesting purposes under the rules of the 1970 ASRP (which required ten allotments for vesting) or under the rules of the 1990 ASRP (which required only five).

The court concludes that plaintiff needed ten allotments for any of his pre-1990 allotments to vest. The 1990 ASRP provides that "allotments under [the 1990 ASRP] shall constitute an allotment of credit for purposes of vesting under Section 2.03 of the [1970 ASRP]." (1990 ASRP § 8.01.) The Collins memo provides the following explanation:

> I'm writing this memo to you to let you know that <u>you will automatically be placed in the 1990 version for your allotments earned hereafter unless you should elect to continue earning future allotments under the 1970 version.</u> In making your decision about this matter, it's important that you understand how your vesting would be handled in making the transition between versions:
>
> VESTING ON 1990 VERSION ALLOTMENTS
> Your number of previous allotments earned in the 1970 version would count toward your 1990 version vesting (e.g. if you had 7 allotments in the 1970 version, you would be fully vested in all 1990 allotments earned from your first 1990 allotment).
>
> VESTING ON 1970 VERSION ALLOTMENTS
> Your number of allotments earned in the 1990 version would count toward your 1970 version vesting (e.g. if you had 7 allotments in the 1970 version and earned

---

[5] Plaintiff's arguments for vesting based on § 2.03(a) of the 1990 ASRP fail for the same reasons as his arguments based on § 2.03(a) of the 1970 ASRP.

8

Case 1:03-cv-01300-WCG   Filed 05/24/05   Page 8 of 11   Document 41

> your first 1990 allotment, you would be considered to have had 8 allotments for ultimate vesting purposes under the 1970 version).

(Praska 2/7/05 Aff. ¶ 2, Ex. A.) Plaintiff's claim that this language means he was "fully vested in all company contributions as of the introduction of the 1990 version of the [ASRP]" (Pl.'s Resp. Br. at 3) is clearly incorrect. The memo states only that allotments earned in the 1990 ASRP will be counted toward 1970 ASRP vesting, and allotments earned in the 1970 ASRP will be counted toward 1990 ASRP vesting. Nothing in the memo states that 1970 version allotments would vest pursuant to 1990 version vesting rules. The example under "VESTING ON 1970 VERSION ALLOTMENTS" makes it clear that they would not, since on plaintiff's interpretation, an individual with seven allotments would have been fully vested without earning any additional allotments, rather than having "8 allotments for ultimate vesting purposes under the 1970 version."

Plaintiff also relies on § 8.01 of the 1990 ASRP, which reads, in relevant part, as follows:

> If a full-time commission agent elected to participate in this Plan, any Company Credit allotments under this Plan shall constitute an allotment of Credit for purposes of vesting under Section 2.03 of the Old Plan. In the event a full-time commission agent becomes a participant in this Plan, any Accumulated Credit under the Old Plan shall be combined with any Accumulated Credit under this Plan, and the provisions of Article 6 of this Plan shall control all distributions of any Accumulated Credit under both this Plan and the Old Plan.

(1990 ASRP § 8.01.) Plaintiff claims that because credits were "combined" pursuant to the second sentence quoted, allotments of credit received under the 1970 ASRP vested under the terms of the 1990 ASRP. This interpretation reads the first sentence quoted out of the contract. A better interpretation of the second sentence is that credits under the 1970 ASRP are "combined" with credits under the 1990 ASRP for purposes of distributions under Article 6.

9

**II. The FTA Plan**

Plaintiff has moved for partial summary judgment on his claim for his contributions under the FTA Plan. The parties agree that plaintiff is entitled to receive $24,086.53 (the value of his contributions on the date of his termination). They dispute whether plaintiff is entitled to prejudgment interest on that amount. In an action for breach of contract, prejudgment interest begins to run from the date of the breach. *Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.*, 964 F.2d 694, 695 (7th Cir. 1992) (applying Wisconsin law). Here, prejudgment interest never began to run because defendant never breached its contractual obligation to tender plaintiff's contributions to him following his termination. Furthermore, because defendant committed no breach, the court cannot enter judgment in favor of plaintiff on his claim under the FTA Plan. *See, e.g., Riegleman v. Krieg*, 679 N.W.2d 857, 862-3 (Wis. Ct. App. 2004) ("In evaluating a breach of contract claim, [the court] must determine whether a party has violated its terms."). Rather, judgment for defendant is appropriate, and there is no reason to delay a final decision on the issue notwithstanding that defendant has not filed a cross-motion for summary judgment on plaintiff's FTA Plan claims. *Spitz v. United States*, 432 F. Supp. 148, 150 (E.D. Wis. 1977) ("[A] court may grant summary judgment to a nonmoving party when it appears from the record that there is no factual dispute and the nonmovant is entitled to summary judgment as a matter of law.") This does not, of course, excuse defendant from its obligation to tender plaintiff's contributions to him. Failure to do so would be a breach, giving rise to an action.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment will be granted insofar as it seeks a determination that plaintiff is not entitled to recover under the 1970 ASRP, and that

plaintiff forfeited credits for pre-1990 allotments upon his termination. Defendant's motion will otherwise be denied. Plaintiff's motions for summary judgment will also be denied, and summary judgment will be granted for defendant on plaintiff's claim arising under the FTA Plan. The remaining issues for trial are whether plaintiff was a participant in the 1990 ASRP, and if so, what the value of his credits for his 1992 allotment was on the date he was terminated. The clerk shall set this matter for a Rule 16 telephone conference for further scheduling.

**SO ORDERED.**

Dated this  24th  day of May, 2005.

s/ William C. Griesbach
William C. Griesbach
United States District Judge